IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KIM EVANS, et al.,

                    Plaintiffs,

v.                                   CIVIL ACTION NO.   2:12-cv-03838

SERGEANT MARTIN, et al.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are Defendants' motions to dismiss.  [ECF 7, 41.]  For the reasons that follow, the motion to dismiss the original Complaint is **DENIED AS MOOT**.  [ECF 7.]  Defendants' motion to dismiss the Amended Complaint is **GRANTED IN PART** and **DENIED IN PART.** [ECF 41.]  Also pending is Defendants' motion to strike matters within Plaintiffs' response to the motion to dismiss.   The Court **GRANTS** this motion [ECF 44].

### I.      BACKGROUND

This case arises from the alleged cruel and unusual punishment of Plaintiffs, female convicts incarcerated at the Southwestern Regional Jail ("SWRJ" or "Jail") in Logan County, West Virginia.  The SWRJ is one of several West Virginia jails operated by Defendant West Virginia Regional Jail and Correctional Facility Authority ("WVRJA").  In addition to the WVRJA, the Plaintiffs also name as Defendants Sergeant Chadd Martin (a SWJA correctional officer), Joseph DeLong (the Executive Director of the WVRJA), and Carl Aldridge (the Chief of Operations of the WVRJA).

### A. *Factual Background*

The following allegations of facts are derived from Plaintiffs' Amended Complaint (ECF 32) or are otherwise not in contention.   As it must, the Court accepts these facts as true for the purposes of ruling on the motions to dismiss.

In late July 2010, female inmates at the SWRJ advised jail staff that a female inmate, Melanie McCoy, was having chest pains.   McCoy was taken from her cell and examined by the SWRJ medical staff.   At some point, McCoy advised Sergeant Martin that some of the women in her unit were using drugs.   In response to this information, McCoy's unit was placed on lock-down. Thereafter, Defendant Martin and other correctional officers went to McCoy's housing unit to search for drugs.

Upon his arrival McCoy's unit, Defendant Martin entered a cell, and ordered the female inmates to stand up.   The inmates complied.   Martin then allegedly grabbed the women, threw them to the floor, cursed them, and sprayed "O.C." (*i.e.* pepper-spray) directly into Plaintiff Katrina Salmons' and the other inmates' eyes.   Thereafter, Martin entered a nearby cell occupied by Plaintiff Kim Evans and other women.   Martin did not advise the women why he was there, but allegedly demanded, "Where's it at, bitches?"   (ECF 32 at 5.)   Martin then sprayed O.C. into these women's eyes.   Martin then returned to Plaintiff Salmons' cell and sprayed her eyes a second time.   Martin then returned to Plaintiff Kim Evans' cell and repeated the "spraying and beating."   (*Id.*)   Plaintiffs allege that they and their cellmates were kicked and thrown to the floor after they were sprayed with O.C.   Some correctional officers refused to enter the area because "it was dripping with O.C. spray."   (*Id.*)   Martin and other correctional officers jeered at the women and supported Martin's physical and verbal abuse.   No one intervened.   Martin is also

2

alleged to have "pressed the full-length of his body against the backside of [Plaintiff Dina Cornwell's] body in a sexually intimidating and wholly inappropriate manner."   (*Id.* at 6.) Martin forced the women down the hall "where they were stripped of all clothing and made to sit on the floor against the wall."   (*Id.* at 7.)   Martin continued his verbal assault on the women. Although the medical staff monitored the women's heart rates, the women were not provided any medical attention for the pain and blindness caused by the pepper-spray until several hours had passed.   Plaintiffs further allege that the SWRJ staff told the women that Melanie McCoy—the inmate who had experienced chest pains and reported that the Plaintiffs had drugs in their cells— had instigated Sergeant Martin's investigation.   As alleged, correctional officers then placed the women in a cell with McCoy and encouraged them to attack her, but the women refused to do so. Hours after the incident, the women were permitted to change clothes and rinse their eyes.   They were then given cleaning supplies and instructed to wash the cells that had been sprayed with the O.C.   The women asked the staff to photograph their injuries, but the staff refused their requests. The women filed written administrative complaints, but they never received a response from the WVRJA.   Thereafter, some of the women contacted attorneys.

### B.  Procedural Background

In the original Complaint, which was filed on July 30, 2012, the named Plaintiffs were Kim Evans and Katrina Salmons.   The Complaint also identified other unnamed female inmates described only as "Jane Does."   The Defendants were Sergeant Martin, the WVRJA, and unnamed "John Doe Guards" defendants.   (ECF 1 at 1.)   The Complaint alleged a state common law negligence count and two 42 U.S.C. § 1983 counts that appear to be based on the Eighth

Amendment prohibition against cruel and unusual punishments and the use of excessive force.[1]

Defendants filed their Answer to the Complaint asserting as their first defense failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6) (ECF 5 at 1).

Thereafter, Defendants filed their motion to dismiss the Complaint asserting, among other

things, that the WVRJA and Defendant Martin acting in his official capacity are not "persons"

within the meaning of § 1983, that Defendant Martin was entitled to qualified immunity, and that

the negligence claim failed because the Complaint did not state that Plaintiffs limited their request

for damages to the limits of the State's insurance policy. (ECF 7).   Plaintiffs responded in

opposition, and Defendants replied.

On April 19, 2013, Plaintiffs filed their motion to amend the Complaint (ECF 19).

Defendants filed no response.

The Amended Complaint, filed with the Court's leave on July 8, 2013, again names Evans

and Salmons as Plaintiffs.   (ECF 32.)   The Amended Complaint substitutes four named female

inmates for the previously designated Jane Doe Plaintiffs.   The Amended Complaint again names

Defendants Sergeant Chadd Martin and the WVRJA, and adds Joseph DeLong (Executive

Director of the WVRJA) and Carl Aldridge (Chief of Operations) as Defendants, both of whom are

alleged to have acted in their official capacities.   The Amended Complaint drops the previously

designated "John Doe Guards" as Defendants.

As with the original Complaint, the Amended Complaint nominally alleges the same three

counts against all Defendants:   Count One is a state law negligence claim.   Counts Two and

---

1   Neither the original Complaint nor the Amended Complaint states whether Plaintiffs are pre-trial detainees or convicted prisoners.   Based on the nature of the claims and the parties' memoranda it appears undisputed that Plaintiffs are convicted prisoners who were serving sentences of imprisonment at the time of the alleged events. Accordingly, the Court will apply Eighth Amendment, rather than Fourth Amendment, standards.

Three are § 1983 claims.  Although these Counts match the Counts alleged in the original Complaint in number and title, they expand upon and introduce theories of liability against the Defendants beyond those identified in the original Complaint.  Fairly construed Counts Two and Three assert § 1983 excessive force, cruel and unusual punishment, medical needs, and failure to safeguard claims under the Eighth Amendment.

Following the filing of the Amended Complaint, the Court permitted the parties to supplement their briefing on the original motion to dismiss.  In response, Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6).  Plaintiffs filed their responsive memorandum.  Defendants replied.  The issues are now ripe for review.

## II.    LEGAL STANDARDS

A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action.  A Rule 12(b)(1) motion may attack subject matter jurisdiction in two ways.  First, a Rule 12(b)(1) motion may attack the complaint on its face contending that the complaint "fails to allege facts upon which subject matter jurisdiction can be based."  *Campbell v. United States*, No. 2:09–0503, 2010 WL 696766, at *7 (S.D. W. Va. Feb. 24, 2010) (Copenhaver, J.) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). Second, the defendant can assert that the allegations in the complaint establishing jurisdiction are not true.  *Id.* A motion questioning subject matter jurisdiction must be considered before other challenges because the court must find it has jurisdiction before determining the validity of any claims brought before it.  *Evans v. B.F. Perkins Company*, 166 F.3d 642, 647 (4th Cir. 1999).  "It is the duty of the Court to see to it that its jurisdiction is not exceeded; and this duty, when necessary, the

5

Court should perform on its own motion." *Spence v. Saunders*, 792 F. Supp. 480, 482 (S.D. W. Va.1992) (Faber, J.) (citation omitted).   The plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant.   *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face."   *Robinson v. Am. Honda Motor Co., Inc*., 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

A complaint fails to state a viable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570; see also *Iqbal*, 556 U.S. at 662 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

6

### III.   DISCUSSION

Defendants contend that the Court lacks subject matter jurisdiction over Plaintiffs' claims against the WVRJA, over their official capacity claims against Defendants Martin, DeLong, and Aldridge, and over the state negligence claim.  Each of these claims implicates the State's sovereign immunity under the Eleventh Amendment of the U.S. Constitution.

"The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Virginia Dep't. of Health*, 4:12–cv–0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov.13, 2012) (citing *Andrews v. Daw*, 201 F.3d 521, 525, n.2 (4th Cir. 2000)).   "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.*

In their motion to dismiss the Amended Complaint, Defendants directly challenge the Court's subject matter jurisdiction insofar as their arguments rely on Eleventh Amendment analysis.  Accordingly, the Court will first address Defendants' immunity arguments using Rule 12(b)(1) standards and then proceed to Defendants' Rule 12(b)(6) arguments.[2]

### A.  Claims implicating the Court's subject matter jurisdiction

#### 1.  Defendant WVRJA is not a "person" within the meaning of 42 U.S.C. § 1983 and is immune from liability under the Eleventh Amendment of the U.S. Constitution.

In their motion to dismiss, Defendant WVRJA argues it is not a "person" within the meaning of 42 U.S.C. § 1983 and is immune from suit under the Eleventh Amendment of the U.S.

---

[2]  Because the thrust of Defendants' subject matter jurisdiction argument is that the Amended Complaint fails to allege facts upon which subject matter jurisdiction can be based, the Court's conclusions would be the same if it had applied Rule 12(b)(6) standard.

Constitution.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989).  In *Will*, the

Supreme Court held

> Section 1983 provides a federal forum to remedy many deprivations of civil
> liberties, but it does not provide a federal forum for litigants who seek a remedy
> against a State for alleged deprivations of civil liberties. The Eleventh Amendment
> bars such suits unless the State has waived its immunity . . . or unless Congress has
> exercised its undoubted power under § 5 of the Fourteenth Amendment to override
> that immunity.

(internal citation omitted).   Plaintiffs' response to the motion to dismiss the Amended Complaint

fails to directly rebut this challenge.   The Court notes, however, that in their response to

Defendants' motion to dismiss the original Complaint, Plaintiffs conceded that Defendant

WVRJA is "typically" not a person subject to suit under § 1983.   (ECF 10 at 3–4.)   The law is

well-established on this point.   The WVRJA is immune from suit.   Accordingly, the Court

**GRANTS** the motion to dismiss Defendant WVRJA from this case.

> 2. *Plaintiffs' claims against Defendants Martin, DeLong, and Aldridge acting in
>    their official capacities fail as a matter of law.*

Relying again on *Will v. Michigan Dep't of State Police*, Defendants contend that

Plaintiffs' claims against the individual Defendants fail because State officials acting in their

official capacities are not "persons" within the meaning of § 1983.   (ECF 42 at 7.)   As here, *Will*

was a federal civil rights case where the plaintiff sought monetary damages.   The Court stated

> Obviously, state officials literally are persons.   But a suit against a state official in
> his or her official capacity is not a suit against the official but rather is a suit against
> the official's office.   As such, it is no different from a suit against the State itself.
> We see no reason to adopt a different rule in the present context, particularly when
> such a rule would allow petitioner to circumvent congressional intent by a mere
> pleading device.

*Id.* at 71 (internal citations and footnote omitted).

In their response to the motion to dismiss the Amended Complaint, Plaintiffs essentially concede that official capacity claims against the individual Defendants are barred by the Eleventh Amendment.   (ECF 43–1 at 1.)   However, Plaintiffs urge the Court to construe their Amended Complaint to permit claims against Defendants Martin, DeLong, and Aldridge acting in their individual capacities to survive.   Plaintiffs, citing *Biggs v. Meadows*, 66 F.3d 56, 59–60 (4ᵗʰ Cir. 1995), argue that a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983.   Plaintiffs' point of law is correct.   The problem, however, is that, although they did not characterize Defendant Martin's capacity, they explicitly stated that their claims against DeLong and Aldridge were based on these Defendants' official capacities.   *See* ECF 32 at 3.   As discussed below, even if the Court construes the claims against DeLong and Aldridge as individual capacity claims, these claims fail for inadequate pleading under *Iqbal* and *Twombly*.

Accordingly, based on *Will*, Plaintiffs' claims against the individual Defendants acting in their official capacities fail as a matter of law.   Accordingly, the Court **GRANTS** Defendants' motion to dismiss the § 1983 claims against Defendants Martin, DeLong, and Aldridge acting in their official capacities.

### 3.   *Defendant Martin's qualified immunity defense is premature*

Defendant Martin argues that he is entitled to qualified immunity on Plaintiffs' § 1983 individual capacity claims.   Plaintiffs' § 1983 prisoner claims are drawn from the Eighth Amendment's prohibitions on excessive force, cruel and unusual punishment, deliberate indifference to a prisoner's serious medical needs, and failure to safeguard.   Martin asserts that his "actions were constitutionally appropriate and justified to control the inmates who were

violating direct orders."   (ECF 42 at 14.)   He claims that he "used the pepper spray in a good faith effort to maintain and restore discipline" during his investigation of Plaintiffs' unit.   (*Id.*)   He claims that Plaintiffs "received immediate medical attention following the use of pepper spray." (ECF 42 at 13.)

The defense of "[q]ualified immunity shields a government official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "   *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow*, 457 U.S. at 818; *see also Hensley v. Koller*, — F.3d —, No. 12-2147, 2013 WL 3336822 at *2 (4th Cir. 2013) (citing *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)).   Qualified immunity is more than immunity from liability; it is "an entitlement not to stand trial or face the other burdens of litigation."   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Courts use a two-step analysis when resolving the qualified immunity claims of government officials.   *See Saucier v. Katz*, 533 U.S. 194, 195 (2001).   First, a court must decide whether the plaintiff has alleged facts that show a violation of a constitutional right.   *See id*. at 201.   Second, a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.   *See id.*   "A court may address the second question—whether a right is clearly established—without ruling on the first-existence of the right."   *Hensley v. Koller*, — F.3d —, 2013 WL 3336822 at *2 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).   A government

10

official asserting a qualified immunity defense bears the burden of proof and persuasion.  *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

Analysis of the second *Saucier* prong efficiently dispenses with Defendants' argument. The focus of the Court's inquiry is whether Plaintiffs have plausibly shown the violation of a clearly established constitutional right.

In 1994, the Supreme Court stated

> In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners.  The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In *Farmer*, the Supreme Court explained that a prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, "sufficiently serious."  *Id.* (quotation omitted). Second, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  *Id.*  "The second requirement follows from the principle that 'only the unnecessary *and wanton* infliction of pain implicates the Eighth Amendment.'"  *Id.* (citing *Wilson v. Seiter*, 501 U.S., 294, 297 (1991) (citations omitted).  Moreover, "a prisoner advancing such a claim must, at a minimum, allege deliberate indifference to his serious medical needs.  "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' " *Id.*  (citations omitted).  "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (citations omitted).

It has been clearly established since at least 1996 that it is a violation of the Eighth Amendment for prison officials to use chemical agents against inmates in quantities greater than

necessary *or* for the sole purpose of inflicting pain.   *See Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)).

In *Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010), a case decided five months before the incident alleged in Plaintiff's Complaint, the Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury, although the extent of any resulting injury may be material to the question of damages and informative as to the likely degree of force applied.   In so holding, the Supreme Court overruled the Fourth Circuit's precedent that excessive force claims based solely on a *de minimis* nature of the resulting injury are not legally viable. *Id*. at 38 (overruling *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998), *Riley v. Dorton*, 115 F.3d 1159 (1997) (*en banc*), and *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994) (*en banc*).   *See also Hill v. Crum*, — F.3d —, No. 12–6705, 2013 WL 4082271 at *6 (4th Cir. Aug. 14, 2013) (Thacker, J. dissenting) (recognizing *Wilkins'* overruling of *Taylor, Riley,* and *Norman*, but reversing district court's denial of correctional officer's motion for judgment as a matter of law on the basis that the officer was entitled to qualified immunity because his conduct pre-dated the *Wilkins* decision).   In *Wilkins*, the Court stated that, "[t]he 'core judicial inquiry' . . . is not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citation altered)).   However, not every malevolent touch by a prison guard gives rise to a federal cause of action and a *de minimis* application of force will not result in a constitutional violation.   *Id.* (quoting *Hudson*, 503 U.S. at 9).   Where the force applied is

excessive, however, a constitutional claim may survive summary dismissal even if the resulting injury is *de minimis*.   *Id.* at 40.

Here, Plaintiffs' Amended Complaint alleges detailed facts—all of which must be accepted as true at this stage of the litigation—that plausibly show that Defendant Martin's alleged use of pepper spray at the SWRJ on July 30, 2010, and that his alleged subsequent actions violated Plaintiffs' clearly established Eighth Amendment rights to be free from unnecessary and wanton infliction of pain.   For example, the Complaint alleges that Defendant Martin in a violent rage entered Plaintiffs' cells and without any provocation or justification repeatedly sprayed large quantities of pepper spray into their eyes, beat, kicked, cursed, threw the women around the cell, and forced the women down a hallway where they were stripped of their clothing and forced to sit on the floor.   The Complaint alleges that the women were blinded by the pepper spray and forced to endure the pain from the spray "for hours with no relief."   (ECF 32 at 5–7).   The Complaint alleges that Plaintiffs' requests for medical treatment were denied and they could not rinse their eyes or change their clothes until "hours" after the incident.   (*Id.* at 8.)   That such conduct violated an inmate's constitutional rights under the Eighth Amendment was clearly established at the time of the incidents described in the Complaint.   As such, the Court cannot at this juncture find that Defendant Martin is entitled to qualified immunity on the § 1983 claim.

The Court is mindful that qualified immunity is intended to relieve defendants not just from liability, but also from the burden of defending oneself in a meritless lawsuit.   The merits of this lawsuit, of which the Court expresses no view, will be tested another day.   Based on the allegations set forth in the Amended Complaint, the motion to dismiss Plaintiffs' § 1983 claims against Defendant Martin acting in his individual capacity must be and is **DENIED.**

> **4.**     *State negligence claim against Defendants Martin, DeLong, and Aldridge*

In Count One of the Amended Complaint, Plaintiffs allege that the "Defendants, by and through the actions of Defendant Martin and others" breached their duty of reasonable care to Plaintiffs.   The Count incorporates by reference the Complaint's preceding factual allegations. Thereafter, the Count alleges in wholly conclusory fashion that "Defendants" acted negligently when they used excessive force, inflicted cruel and unusual punishment, failed to insure proper supervision of Defendant Martin and other correctional officers, failed to ensure that proper jail administrators were in place, failed to hire, train, re-train, and supervise Defendant Martin and other correctional officers, failed to safeguard inmates, and failed to "create a system to record" and allowing "conditions at the facility to deteriorate to such a degree that administrative complaints by inmates could be willfully ignored."   (ECF 32 at 9–10.)

Count One fails to state a cognizable claim for negligence against any Defendant.   Under West Virginia law, in the absence of an insurance contract waiving the defense, the State enjoys constitutional immunity and "shall never be made a defendant in any court of law or equity." *Clark v. Dunn*, 465 S.E.2d 374, 378 (W. Va. 1995) (citing W. Va. Const. art. VI § 35).   An exception to the State's constitutional immunity exists where insurance coverage is available under W. Va. Code § 29–12–5(a).   Defendants concede that such insurance coverage exists. (ECF 42 at 17.)   They maintain, however, that because Plaintiffs' Complaint fails to limit their damages claims to the limits of the State's insurance policy and, thus, Defendants are entitled to constitutional immunity.   In response, Plaintiffs state that "a decision to permanently bar claims based upon the Plaintiffs' failure to limit the scope of the relief sought to an amount under the

limits of the insurance policy would place yet another impossibly high pleading standard upon Plaintiffs."   (ECF 43–1 at 2.)

The Court rejects Plaintiffs' contention that a brief statement evidencing their intent to limit their recovery on this claim to the limits of the State's insurance policy imposes an "impossibly high pleading standard."   The bottom line is that, without any averment indicating that Plaintiffs seek recovery only up to the limits of the State's liability insurance coverage, the pleading fails to plausibly establish that this claim is not barred by West Virginia's constitutional immunity.   It is for this reason the West Virginia Supreme Court of Appeals some seventeen years ago held that it will "not review suits against the State brought under the authority of W. Va. Code § 29-12-5 unless it is alleged that the recovery sought is limited to the applicable insurance coverage and the scope of the coverage and its exceptions are apparent from the record."   Syl. Pt. 3, *Parkulo v. W. Va. Bd. of Probation and Parole*, 483 S.E.2d 507, 516 (W. Va. 1996); *see also Johnson v. C.J. Mahan Constr. Co.*, 557 S.E.2d 845, 848 n.4 (W.Va. 2001) (noting that although the Supreme Court of Appeals "was generous in granting" an appeal where the plaintiff failed to allege in his pleading that the recovery sought was limited to the State's insurance coverage, the court admonished "future litigants should adhere to the requirement this Court announced in *Parkulo*."); *B.E. v. Mount Hope High Sch.*, No. 2:11-cv-00679, 2012 WL 3580091 at *3 (S.D. W. Va. Aug. 17, 2012) (Goodwin, C.J.) (stating that only by limiting the relief sought in its pleading to the state insurance policy limits does the plaintiff make sovereign immunity inapplicable). Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim and **DISMISSES** this claim **WITHOUT PREJUDICE**.

B.  *Claims challenged under Rule 12(b)(6)*

Defendants argue that Plaintiffs' supervisory liability claims fail to satisfy the plausibility

pleading requirements under *Iqbal* and *Twombly*.

        1.  *Supervisory liability claims against Defendants DeLong and Aldridge fail to state a plausible claim*

As noted *supra*, a complaint fails to state a viable claim when, viewing the well-pleaded

factual allegations as true and in the light most favorable to the plaintiff, the complaint does not

contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at

570; *see also Iqbal*, 556 U.S. at 662.  While the complaint need not assert "detailed factual

allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the

elements of a cause of action."  550 U.S. at 555.

"[S]upervisory officials may be held liable in certain circumstances for the constitutional

injuries inflicted by their subordinates." *Gandy v. Robey*, No. 11–2248, 2013 WL 1339771 at 7–8

(4th Cir. Apr. 4, 2013) (unpubl.) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)).  To

succeed on a supervisory liability claim under § 1983, a plaintiff must establish three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d at 799.  " 'Establishing a pervasive and unreasonable risk of harm

requires evidence that the conduct is widespread, or at least has been used on several different

occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.'" *Id.* at 799) (internal quotation marks omitted).

Further, it is well-settled that the doctrine of *respondeat superior* is generally inapplicable to actions arising under 42 U.S.C. § 1983.  *See Monell v. Department of Social Services of the City of NY*, 436 U.S. 658, 694 (1978).  Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable."  *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir.1982), *abrogated on other grounds by County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).  Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care."  *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).  Thus, in addressing the contention that Plaintiffs have failed to state a claim against Defendants DeLong and Aldridge upon which relief may be granted, the task for the Court is to determine whether the Defendants DeLong and Aldridge, individually, "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir. 1991).

No specific facts are alleged that would support a plausible theory of supervisory liability on these particular Defendants.  In their Amended Complaint, the only specific reference to Defendants DeLong and Aldridge appears in the paragraphs introducing the parties and stating their positions at WVRJA.  (ECF 32 at 3.)  Their names and titles are never mentioned again. Nowhere in the Amended Complaint do Plaintiffs specifically allege that DeLong and Aldridge had actual (or even constructive) knowledge of the events alleged to have occurred on July 30,

17

2010.  Assuming DeLong and Aldridge knew of the incident, nowhere in the Amended Complaint do Plaintiffs allege facts that show that DeLong's and Aldridge's reaction to Defendant Martin's alleged conduct was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices.  Nor do Plaintiffs plead any facts that show––plausibly or otherwise–that an affirmative causal link between DeLong's and Aldridge's hypothetical inaction and the particular constitutional injuries alleged to have been suffered by Plaintiffs.  Rather, the only portions of the Amended Complaint that purport to establish supervisory liability on behalf of DeLong and Aldridge appear—not in the factual section of the Amended Complaint—but rather in formulaic, factually unadorned recitation of stray elements of a supervisory liability cause of action.  For example, in Count One, the negligence count, Plaintiffs allege that unspecified "Defendants" breached their duty of reasonable care by: negligently failing "to insure proper supervision of Defendant Martin and other correction officers"; negligently ensuring "that proper administrators, including a warden, were in place"; negligently failing "to comply with the West Virginia Constitution, the United States Constitution, and applicable statutory law with regard to the prohibition of the use of excessive force and cruel and unusual punishment"; negligently hiring, training, retraining, and supervising Defendant Martin and other unnamed correctional officers; negligently failing to safeguard inmates against abuses by Defendant Martin and other unnamed staff members; and negligently failing to "create a system to record" and "allowing conditions at the facility to deteriorate to such a degree that administrative complaints by inmates could be willfully ignored."  (ECF 32 at 9–10.)  Counts Two and Three are similarly conclusory and factually deficient.  Assuming for the sake of discussion that Plaintiffs intended to sue Defendants DeLong and Aldridge in their individual

capacities and under a supervisory liability theory, their claims fall far short of the plausibility standards announced in *Iqbal* and *Twombly*.

Accordingly, the Court, construing Plaintiffs' claims against Defendants DeLong and Aldridge as both official <u>and</u> individual capacity claims, **GRANTS** the motion to dismiss the claims against these two Defendants.

> 2. *Eighth Amendment Claims against Sergeant Martin acting in his individual capacity*

In addition to their argument that Defendant Martin is entitled to qualified immunity on Plaintiffs' § 1983 claims, Defendants also urge dismissal based on their quarrel with the factual allegations of the Complaint.   As previously discussed, Plaintiffs allege that because they did not disobey Martin's orders, his use of pepper spray was unjustified and constituted excessive force and cruel and unusual punishment under the Eighth Amendment.   Defendants basically argue that these contentions are untrue.   Defendants state that Plaintiffs refused to obey Defendant Martin's orders and his use of pepper spray was necessary to subdue insubordinate inmates.

Defendants' first argument ignores the fundamental principle that drives the Court's analysis of a motion to dismiss under Rule 12(b)(6): that the Court must accept the factual allegations set forth in the Amended Complaint as true.   While Plaintiffs' Amended Complaint is deficient in the respects discussed *supra*, it more than adequately pleads facts, assumed to be true at this point, alleging constitutional violations by Defendant Martin.   Accordingly, the Court **DENIES** the motion to dismiss the § 1983 claims on this basis.

C.  *Jane Doe Plaintiffs*

Finally, Defendants challenge the inclusion of four new Plaintiffs in the Amended Complaint.   Defendants contend that inclusion of these Plaintiffs is barred by the applicable

two-year statute of limitations.   Plaintiffs' response—in its entirety—is that the "suit against the Defendants was timely filed and the claims of Jane Does were properly converted to Dina Cornwell, Dawn Phelfrey [sic], Marlena Bently Adkins, and Stacy Farmer and that the Defendant [sic] suffered no prejudice."   (ECF 43 at 1.)

At the outset, the Court must first decide whether it may reach the merits of Defendants' statute of limitations argument.   First, Defendants never responded to Plaintiffs' motion to amend.   Arguably, Defendants may have waived any objection to the Court's order permitting the filing of the Amended Complaint (although Plaintiffs made no such argument in their response to the motion to dismiss the Amended Complaint.)   Second, if not waived, Defendants' statute of limitations defense is premature at this juncture.     The Fourth Circuit has observed that

> [a] motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses.   In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint.

*Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (citing *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 348-49 (2d ed. 1990) (citations altered) ("The complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading." (footnotes omitted)).

On the face of the Amended Complaint it is readily apparent that Plaintiffs Cornwell, Pelphrey, Adkins, and Farmer have been added to this suit well-after the expiration of the applicable two-year statute of limitations.   It is not disputed that the cause of action accrued on

20

July 30, 2010, the original Complaint was filed on July 30, 2012, the applicable two-year statute of limitations barred suits filed after July 30, 2012, Plaintiffs moved to amend their Complaint on April 19, 2013, and the Amended Complaint was filed with the Court's leave on July 8, 2013. Although these basic facts are straightforward and uncontested, it is far from clear whether the interests of justice favor allowing these Plaintiffs to remain in this case under the relation-back doctrine embodied in Federal Rule of Civil Procedure 15(a) and (c).  The Court, however, finds that it is inappropriate to address this issue in the current posture of the case.  This affirmative defense is better reserved for consideration on a motion for summary judgment.  Accordingly, the Court **DENIES IN PART** the motion to dismiss the Amended Complaint to the extent the motion seeks dismissal of the newly-added Plaintiffs at this stage in the litigation.

> D.      *Defendants' Motion to Strike*

Finally, the Court **GRANTS** Defendants' motion to strike matters raised in Plaintiffs' response to the motion to dismiss [ECF 44] on the ground that they are outside the scope of the pleadings.   Specifically, Defendants ask that the expert opinion report of Raymond Sabbatine that is attached as an exhibit to Plaintiffs' response be stricken.   Mr. Sabbatine, among other things, opines that Defendants used excessive force against Plaintiffs.   Such an opinion is better suited at the summary judgment stage of this case and is inappropriate and unhelpful to the Court in deciding a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6).

> IV.     *CONCLUSION*

For the reasons stated, the Court **DENIES AS MOOT** Defendants' motion to dismiss the original Complaint [ECF 7].   The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss the Amended Complaint [ECF 41].   The Court **DISMISSES** all claims against

Defendant WVRJA, Defendant Aldridge, and Defendant DeLong.   The Court **DISMISSES** the claims against Defendant Martin acting in his official capacity.   The Court **DISMISSES** the negligence claim against Defendant Martin.   The Court **DENIES** the motion to dismiss the § 1983 claims against Defendant Martin acting in his individual capacity.   The Court **DENIES IN PART** the motion to dismiss the Amended Complaint to the extent the motion seeks dismissal of the newly-added Plaintiffs at this stage in the litigation.   The Court **GRANTS** Defendants' motion to strike matters raised in Plaintiffs' response to the motion to dismiss [ECF 44].

      **IT IS SO ORDERED**.

      The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and any unrepresented party.

              ENTER:      September 9, 2013

              _____

              THOMAS E. JOHNSTON
              UNITED STATES DISTRICT JUDGE