IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KIM EVANS, et al.,

           Plaintiffs,

v.                                        CIVIL ACTION NO.   2:12-cv-03838

SERGEANT MARTIN, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Sergeant Chad Martin's motion to dismiss the second amended Complaint [ECF 87], motion for summary judgment [ECF 60], and amended motion for summary judgment [ECF 78].  For the reasons that follow, the Court **DENIES** the motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** the summary judgment motions.

I.        PROCEDURAL BACKGROUND

This case arises from the alleged use of excessive force on July 30, 2010, by Defendant Martin against Plaintiffs, female convicts incarcerated at the Southwestern Regional Jail ("SWRJ" or "Jail") in Logan County, West Virginia.  The material factual allegations, which are vigorously disputed, are set forth in the Court's September 9, 2013, Memorandum Opinion and Order (ECF 51) and will not be repeated here.

## II. LEGAL STANDARD

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *See* Fed.R.Civ.P. 56(e). A court must neither resolve disputed facts nor weigh the evidence. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995). Nor may a court make determinations of credibility. *Sosebee v. Murphy*,

797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of showing that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718–19 (4th Cir. 1991). The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

In his motion for summary judgment and his amended motion for summary judgment, Defendant advances five separate arguments. The Court will address each in turn.

    A. *The addition of Plaintiffs Cornwell, Pelphrey, and Adkins after the applicable statute of limitations has elapsed*

Defendant argues that all claims by Plaintiffs Dina Cornwell, Dawn Pelphrey, and Marlena Bentley Adkins "must be dismissed as a matter of law because they were not timely filed within

3

the two year statute of limitations."[1] (ECF 79 at 7.) Defendant argues that Plaintiffs' naming of Jane Does in her original Complaint and the later substitution of Cornwell, Pelphrey, and Adkins for the Jane Does is an end-run tactic around the statute of limitations that is not supported in law. Plaintiffs' entire responsive argument is as follows: "The statute of limitations for Plaintiffs Cornwell, Pelphrey, and Adkins was properly preserved and the mere naming of parties already known to Defendant visits no injustice upon him."[2]

The Court finds that Plaintiffs Cornwell, Pelphrey, and Adkins's claims relate back to the filing of the original, timely-filed Complaint under Federal Rule of Civil Procedure 15(c). Rule 15(c)(1) provides in pertinent part:

> **(1) *When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>
>    **(A)** the law that provides the applicable statute of limitations allows relation back;
>
>    **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
>    **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>       **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

---

[1] There is no dispute that the applicable statute of limitations under West Virginia law is two-years. *See Orum v. Haines*, 68 F.Supp.2d 726, 730 (N.D. W. Va. 1999) (citing W. Va. Code § 55–2–12) ("In West Virginia, § 1983 actions are considered personal injury actions and utilize the two year statute of limitations."). In tort actions, the statute of limitations begins to run when "the plaintiff knows, or by the exercise of reasonable diligence should know (1) that the plaintiff has been injured . . .." Syl. Pt. 3, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009) (citing Syl. Pt. 4, *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901 (W. Va. 1997)).

[2] In the two-page response to Defendant's motion for summary judgment, Plaintiffs state that a memorandum is attached to their filing. No memorandum was attached to the November 19, 2013, response, and, despite the passage of some six months, none has been tendered to date.

4

>> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The advisory committee notes to the 1966 amendment of Rule 15 state:

The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

The Fourth Circuit has held that in cases involving the substitution of John Doe defendants, the notice requirement of Rule 15(c)(1)(C) provides adequate protection to the new party. *See Goodman v. Praxair, Inc*., 494 F.3d 458, 472 (4th Cir. 2007) ("[W]hen a person is provided notice within the applicable limitations period that he would have been named in the timely filed action but for a mistake, the good fortune of a mistake should not save him."). The Fourth Circuit reasoned that Rule 15(c)(1)(C)'s "emphasis on notice, rather than on the type of 'mistake' that has occurred, saves the courts not only from an unguided and therefore undisciplined sifting of reasons for an amendment but also from prejudicing would-be defendants who rightfully have come to rely on the statute of limitations for repose." *Id*. at 473.

This same permissive approach applies in the case of substitution of John Doe plaintiffs. *See, e.g.*, *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 630 (D. Md. 2011) (holding that the applicable statute of limitations would not bar the addition of two plaintiffs where the defendants had been fully apprised of a claim arising out of specified conduct alleged in the original complaint and, thus, had notice of that claim and where the defendants had not demonstrated any prejudice from the addition of the new plaintiffs); *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 754 (E.D. Va. 2010) (permitting the addition of a new plaintiff and new claims

5

where there was a clear factual nexus between the new claims and the claim in the original complaint and where the defendant had notice and made no argument that he was prejudiced by the amendments); 6A The Late Charles Alan Wright, et al., *Federal Practice & Procedure* § 1501 (West 3d ed. 2014) ("As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added, and defendant should not be permitted to invoke a limitations defense. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading.") (footnotes omitted).

With these principles in hand, it is apparent that Defendant's opposition to the addition of Plaintiffs Cornwell, Pelphrey, and Adkins is meritless. At the outset, the Court notes that Defendant filed no response in opposition to Plaintiff's motion to amend their original Complaint. The original complaint named only Plaintiffs Evans and Salmon, along with "Jane Does". In the motion to amend this Complaint, Plaintiffs attached a proposed amended complaint which added Plaintiffs Cornwell, Pelphrey, and Adkins. With the motion to amend unopposed, the Court granted the motion. Thus, Defendant has waived opposition to the inclusion of the new Plaintiffs.

Looking past Defendant's procedural misstep, his opposition to the addition of the new Plaintiffs is unconvincing where Defendant has offered no evidence—nor even argued—that he will suffer prejudice from the addition of the new parties. Nor has he contended that he did not have adequate notice that the new Plaintiffs were involved in some manner in the incident at issue in this case. Doubtless, Defendant's lack of any real resistance to the addition of the new Plaintiffs results from the fact that the new Plaintiffs have not introduced any new causes of action

6

against Defendant, and Defendant has long been on notice of the new Plaintiffs' connection with the alleged incident. For these reasons, the Court **DENIES** Defendant's motion for summary judgment to the extent it is predicated on the new Plaintiffs' claims and **DENIES** Defendant's motion to dismiss the second amended complaint.

B. *Individual capacity claims against Defendant Martin*

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983, which states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

To prevail, Plaintiffs must show that the official charged acted personally in the deprivation of the Plaintiffs' rights. Defendant asserts that he is entitled to summary judgment because "Plaintiffs cannot satisfy the subjective or objective component of the excessive force analysis." (ECF 61 at 9; ECF 79 at 10.) Defendant also argues that Plaintiffs cannot establish an Eighth Amendment violation because the use of pepper spray was a reasonable amount of force under the circumstances, was done in a good faith effort to restore order in the prison unit, and that any injuries sustained by Plaintiffs were minor and promptly treated.[3] In their scant response to Defendant's motion for summary judgment, Plaintiffs assert that the question whether the force applied was done in good faith or was malicious and sadistic is a contested issue of material fact to

---

[3] The second amended Complaint generally states that it is brought pursuant to "42 U.S.C. § 1983; the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; and the Common Law . . . ." (ECF 86 at 1.) The second amended Complaint, like its predecessors, fails to state whether Plaintiffs were pre-trial detainees or convicted prisoners at the time of the alleged incident. In the Court's September 9, 2013, Memorandum Opinion, the Court construed the claims asserted in the prior complaint as being brought under the Eighth Amendment because it appeared from the record generally that Plaintiffs were serving sentences of imprisonment. The parties have not objected to this determination and, thus, the Court will continue to analyze the claims as arising under the Eighth Amendment.

be resolved by a jury.[4] (ECF 63 at 1.)

Although "[a]n express intent to inflict unnecessary pain is not required" to make out an excessive force claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To show a violation of the Eighth Amendment, two elements must be established: 1) "the prison official acted with a sufficiently culpable state of mind (subjective component)" and 2) "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).

Where, as here, inmates claim that a prison official used excessive force against them, the subjective component requires that the inmates demonstrate that officials applied force wantonly; that is, "maliciously and sadistically for the very purpose of causing harm" rather than as part of "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotations omitted). "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain." *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (internal quotations omitted). Factors relevant to this determination include "the need for the application of force, the relationship between the need and the amount of force that was used," the extent of the injury, the threat reasonably perceived by the responsible official, "and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 320–21.

Satisfying the objective component in the context of an excessive force claim, on the other

---

[4] Plaintiffs did not file a response to Defendant's amended motion for summary judgment.

hand, demands only that the force used be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39, (2010). This means, as the Supreme Court has stated, that "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 (citation omitted). Nevertheless, a plaintiff's failure to demonstrate a serious injury is relevant to the Eighth Amendment inquiry. *Wilkins*, 559 U.S. at 37. Indeed, the extent of the injury may suggest that "'the use of force could plausibly have been thought necessary' in a particular situation" or "provide some indication of the amount of force applied." *Id*. (quoting *Hudson*, 503 U.S. at 7). As a result, "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id*. at 38 (quoting *Hudson*, 503 U.S. at 9).

"[C]ivil rights claims present special circumstances on summary judgment." *Kirby v. Blackledge*, 530 F.2d 583, 588 (4th Cir. 1976) (citing *Perry v. Sinderman*, 408 U.S. 593 (1972)). This is so because cases involving constitutional violations involve important public concerns and require resolution of issues of the state of mind of a party. 10B The Late Charles Alan Wright, et al., *Federal Practice & Procedure* § 2732.2 (West 3d ed. 2014). Moreover, in cases where a government official has asserted qualified immunity, the inquiry revolves around a question of the official's state of mind, namely, whether the official acted reasonably and in good faith. Such issues frequently prevent summary judgment. *Id.*

Guided by these legal tenets, the Court finds that Defendant fails to carry his initial burden of showing that there is no genuine issue of material fact, or that he is entitled to judgment as a matter of law. In viewing the record and drawing all reasonable inferences therefrom in a light most favorable to Plaintiffs, the Court finds that a reasonable fact-finder could return a verdict for

the non-movant.

In support of his motions for summary judgment, Defendant has tendered an official incident report that he authored that memorialized the events surrounding his use of pepper-spray, excerpts from his deposition and those of the Plaintiffs, and a copy of the jail's policy and procedure statement governing the appropriate use of chemical agents on inmates by jail staff. (ECF 60–1 through 60–7; 78–1 through 78–8). Other relevant evidence in the record is a copy of Plaintiffs' former expert's report and additional excerpts from Plaintiffs' depositions. (ECF 71–1; ECF 90–1 through 90–3.)

At the heart of this dispute is Plaintiffs' contention that, when spraying some of the inmates with pepper-spray, Defendant applied force unnecessarily and wantonly; that is, "maliciously and sadistically for the very purpose of causing harm" rather than as part of "a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 7. The parties do not dispute that on July 30, 2010, at about 10:00 p.m., Defendant Martin was an on-duty correctional officer at the Southwestern Regional Jail in Logan County, West Virginia. Also not in dispute is the fact that Defendant, along with several other guards, entered two different cells, each housing female inmates, and sprayed some of these inmates with pepper-spray or "OC". It also appears to not be seriously disputed that Defendant Martin's purpose in entering the cells was to investigate a report that the female inmates had ingested some kind of drug that had been smuggled into the jail.

But this is where agreement on material facts ends. Plaintiffs allege that upon entering their cells, Defendant brutally and physically attacked the inmates, repeatedly kicking them and spraying them with OC for no reason. In his supporting memorandum, Defendant admits that he sprayed some of the Plaintiffs, but maintains he did so only after they disobeyed his orders and

10

solely for the purpose of restoring order. Defendant tendered brief excerpts from his deposition in support of his summary judgment motion. Curiously, nowhere in those excerpts was there any testimony by Defendant concerning the circumstances that led him to deploy OC or his precise actions in deploying the OC. More curiously, Defendant tenders an excerpt of the deposition testimony of Plaintiff Pelphrey that plainly contradicts Defendant's version of the facts. Plaintiff Pelphrey testified that she, Plaintiff Evans, and a third inmate were in a cell together when Defendant and a couple other guards entered the inmates' pod and screamed "shakedown." (ECF 60–5 at 3.) Pelphrey testified,

> And the next thing I know they came in—he came—him and another CO came into the cell which we were standing in, and first wanted us to sit. And then told us, no, to stand.
>
> And the next thing I know, they maced the girls. Maced Eva and Kim. They didn't really mace me. But I got the—from the fumes, where he maced those.

*Id.* In addition, Defendant attached excerpts from the deposition of Plaintiff Katrina Salmons. (ECF 60–3.) Plaintiff Salmons testified that Defendant struck her and some of the other Plaintiffs "four or five times in the cell" and Defendant also kicked Plaintiffs. (ECF 60–3 at 3.)

This evidence, drawing all reasonable inferences therefrom in a light most favorable to Plaintiffs, demonstrates that a reasonable fact-finder could return a verdict for the Plaintiffs. Plainly, the central issue is whether Defendant Martin applied force unnecessarily, maliciously, and sadistically for the very purpose of causing harm, as Plaintiffs contend; or, rather, did so as part of a good-faith effort to maintain or restore discipline, as Defendant contends. This material issue is vigorously disputed by the parties. While Defendant devotes much energy emphasizing the allegedly minor, non-permanent, and short-lived effects of the pepper-spray and the alleged

11

physical blows to Plaintiffs, such evidence alone does not bar Plaintiffs from pursuing an excessive force claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.") Thus, for the foregoing reasons, Defendant is not entitled to summary judgment.

  C. *Deliberate indifference claims*

Inmates can establish an Eighth Amendment violation with respect to medical care if they can prove that there has been deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The test for deliberate indifference has two parts. First, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component)." *Harden v. Green*, 27 Fed. Appx. 173, 176 (4th Cir. 2001) (unpublished) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). An inmate alleging an Eighth Amendment violation based on inadequate medical care must show that a prison official subjectively "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference is "a very high standard [and] a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citation omitted). It is not enough under this standard that the inmate was the victim of negligence or even medical malpractice, and "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a [Section] 1983 claim unless exceptional circumstances are alleged.

12

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Under some circumstances, a significant delay in medical treatment may give rise to a constitutional violation. *Webb v. Hamidullah*, 281 Fed. Appx. 159, 166 (4th Cir. 2008). However, "[a]n Eighth Amendment violation only occurs . . . if the delay results in some substantial harm to the patient." *Id.* (internal citations omitted); *see also Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) ("A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm."). Substantial harm may be most persuasively demonstrated where the delay in treatment causes further injury to the inmate, but the requirement may also be met where the delay causes unnecessarily prolonged pain and suffering. *Sealock v. Colorado*, 218 F.3d 1205, 1210 n. 5 (10th Cir. 2000).

Defendant argues that it is undisputed that the Plaintiffs who were sprayed with OC were medically evaluated, decontaminated, and issued clean clothing and, as such, Plaintiffs cannot prevail on a deliberate indifference claim under the Eighth Amendment (ECF 79 at 12). Plaintiff tendered no response to this argument.

The excerpts of Plaintiffs' deposition testimony demonstrate that there is no real dispute that, after they were sprayed, they were taken to a holding cell in or near the jail's medical unit. Once there, nurses checked Plaintiffs' blood pressure, and Plaintiffs were permitted to wash out their eyes. Thereafter, they were permitted to shower and were issued clean clothing. Although the evidence on the exact timeline of these events is not clear, it appears from Plaintiffs Pelphrey, Evans, Cornwell, and Adkins' testimony that Defendant's search of the cells took approximately twenty to thirty minutes, after which Plaintiffs were taken to the medical unit where they were able to wash out their eyes, and that after remaining in the medical unit for about an hour or two,

13

Plaintiffs were permitted to shower, were given clean clothing, and were returned to their cells.

It may well be the case that there was no delay in providing medical treatment for Plaintiffs or, if there was some delay, that there was no unnecessary protraction of the pain caused by the pepper-spray. On the record as it stands, however, the Court simply does not know exactly how long Plaintiffs had to wait before they were permitted to wash out their eyes and receive appropriate medical care. While the Court is cognizant that deliberate indifference claims must satisfy a very high standard and that a showing of mere negligence is not sufficient, the Court simply does not have sufficient evidence to make such a determination concerning this important and disputed factual issue. Accordingly, Defendant is not entitled to summary judgment with respect to the deliberate indifference claims.

### D. *Qualified immunity from Eighth Amendment claims*

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects law enforcements officers from liability for "bad guesses in gray areas" and ensures that they will be held liable only for violating bright-line rules. *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011). It "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

In deciding whether a defendant is entitled to qualified immunity, the Court must examine: (1) whether the facts illustrate that Defendant Martin violated Plaintiffs' constitutional right to be free from excessive force; and, (2) if so, whether Martin's conduct was objectively reasonable in

view of the clearly established law at the time of the alleged event. *See Orem v. Rephann*, 523 F.3d 442, 445 (4th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

There is no question that, if Defendant in fact violated Plaintiffs' Eighth Amendment rights, that such violation was not objectively reasonable in view of clearly established law at the time of the alleged incident *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Defendant maintains that his actions were "constitutionally appropriate and justified to control the inmates who were violating direct orders." (ECF 79 at 13.)

The problem with Defendant's argument is that it requires the Court, as discussed above, to resolve a central and disputed factual issue. The Court may not, at least at this juncture, enter judgment for Defendant based on qualified immunity. The Court, however, is mindful of the approach taken by some courts where submission of the factual issues that are material to qualified immunity are presented to a jury by way of a special verdict, leaving resolution of the qualified immunity defense to the Court after its consideration of the jury's responses to the special verdicts. *See, e.g.. Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007); *Littrell v. Franklin*, 388 F.3d 578 (8th Cir. 2004). The Court will address this approach with the parties prior to trial.

    *E.    Verbal harassment claims*

Defendant contends that Plaintiffs have alleged verbal harassment claims, and he cites authority for the view that threats and cursing by a prison guard directed at an inmate do not violate the inmate's constitutional rights.

Although the second amended complaint contains allegations relating to verbal comments attributed to Defendant, the complaint, fairly construed, does not appear to allege independent

15

verbal harassment or abuse claims. Assuming that such claims were alleged, the Court agrees with Defendant that such claims, standing alone, lack legal merit. When a prison guard verbally abuses or harasses an inmate, such comments alone do not rise to the level of an Eighth Amendment violation. *Mitchell v. SWVRJ Authority*, 7:12–cv–00226, 2012 WL 1978005 at *2 (W.D. Va. June 1, 2012) (collecting cases). To the extent that such claims were intended to be independently asserted, Defendant is entitled to summary judgment on such claims and the Court **GRANTS** summary judgment with respect to these claims.

### IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to dismiss the second amended complaint [ECF 87] and **GRANTS IN PART** and **DENIES IN PART** the summary judgment motions [ECF 60, 78].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    June 10, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE